UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| NADEJA MALONE, et. al.<br>    Plaintiffs,<br><br>v.<br><br>KEVIN BYRD, et. al.<br>    Defendants. | No. 24-cv-03111 |
| DARNELL WILSON, et. al.<br>    Plaintiff,<br><br>v.<br><br>DEREK WILKERSON, et.al.<br>    Defendants. | No. 24-cv-03115<br><br>**DEFENDANTS DEMAND TRIAL BY JURY** |

**ANSWER AND AFFIRMATIVE DEFENSES TO MALONE COMPLAINT**

**NOW COMES** Defendants, City of Springfield (hereinafter, "City"), Derek Wilkerson, Tim Collier, and Ja'Marae Davis, by and through their attorneys, Gregory E. Moredock, Corporation Counsel, and Steven C. Rahn, Sr. Assistant Corporation Counsel for the City of Springfield, and for their Answer to the Plaintiffs' Complaints, state as follows:

**GENERAL ALLEGATIONS**

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985 and the common law and statutes of the State of Illinois.

**ANSWER:** Defendants admit the allegations of this paragraph.

### Jurisdiction

2. Jurisdiction for Plaintiffs' federal claims are based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state law claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**ANSWER:** Defendants admit the allegations of this paragraph.

### Venue

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), in that the claims arose within the Central District of Illinois, to wit; Springfield, Sangamon County, Illinois.

**ANSWER:** Defendants admit the allegations of this paragraph.

### Parties

4. Plaintiff, NADEJA MALONE, is an adult U.S. citizen, who resides in Springfield, Sangamon County, Illinois, and is the natural mother of N.J, a minor.

**ANSWER:** Defendants admit the allegations of this paragraph.

5. Plaintiff, STEPHEN PARIS, is an adult U.S. citizen, who resides in Springfield, Sangamon County, Illinois, and is the natural father of A. P., a minor.

**ANSWER:** Defendants admit the allegations of this paragraph.

6. Defendant, DEREK WILKERSON, (hereinafter WILKERSON), is a duly appointed sworn law enforcement officer with the Springfield Police Department, employed by Defendant CITY OF SPRINGFIELD and, at all relevant times to this Complaint, WILKERSON was acting under the color of state law, ordinance and/or regulation and within the scope of his employment. WILKERSON is sued in his individual capacity.

**ANSWER:** Defendants admit the allegations of this paragraph were true at the time, but

that Wilkerson is no longer employed by the City.

7. Defendant, TIM COLLIER, (hereinafter "COLLIER"), is a duly appointed sworn law enforcement officer with the Springfield Police Department, employed by Defendant CITY OF SPRINGFIELD and, at all relevant times to this Complaint, COLLIER was acting under the color of state law, ordinance and/or regulation and within the scope of his employment. COLLIER is sued in his individual capacity.

**ANSWER:** Defendants admit the allegations of this paragraph.

8. Defendant, JA'MARAE DAVIS, (hereinafter "DAVIS"), is a duly appointed sworn law enforcement officer with the Springfield Police Department, employed by Defendant CITY OF SPRINGFIELD and, at all relevant times to this Complaint, DAVIS was acting under

the color of state law, ordinance and/or regulation and within the scope of his employment. DAVIS is sued in his individual capacity.

**ANSWER:** Defendants admit the allegations of this paragraph.

9. Defendant, CITY OF SPRINGFIELD, (hereinafter "CITY") is an Illinois municipal corporation with its principal place of business located in Sangamon County, Illinois, and is the employer of WILKERSON, COLLIER and DAVIS.

**ANSWER:** Defendants admit the allegations of this paragraph were true at the time, but

that Wilkerson is no longer employed by the City.

10. The CITY is vicariously liable for the common law and state law claims against WILKERSON, COLLIER and DAVIS pursuant to Respondent Superior.

**ANSWER:** Defendants admit the allegations of this paragraph.

11. The CITY is statutorily liable on an indemnification theory on all claims for all awards in this case against WILKERSON, COLLIER and DAVIS, except for any punitive damages.

**ANSWER:** Defendants admit the allegations of this paragraph.

12. Defendant KEVIN BYRD (hereinafter BYRD), is a resident of Springfield, Sangamon County, Illinois.

**ANSWER:** Defendants admit the allegations of this paragraph.

## Material Facts

13. On July 7, 2022, WILKERSON, COLLIER, and DAVIS were on duty as police officers and occupied a marked police vehicle ("the police vehicle") owned by CITY.

**ANSWER:** Defendants admit the allegations of this paragraph.

14. WILKERSON was driving the police vehicle. COLLIER and DAVIS were passengers riding along with him.

**ANSWER:** Defendants admit the allegations of this paragraph.

15. On June 7, 2022, sometime before 10:35 p.m., WILKERSON, COLLIER and DAVIS were in the police vehicle following a 2013 Dodge Challenger ("Challenger"), plate number DF73786, registered to BYRD.

**ANSWER:** Defendants deny the allegations of this paragraph.

16. With the police vehicle behind it, the driver of the Challenger attempted to evade and elude the police vehicle through evasive tactics.

**ANSWER:** Defendants deny the police vehicle was behind the Challenger; Defendants admit the driver of the Challenger attempted to prevent the police vehicle from getting behind.

17. The police vehicle pursued the Challenger without activating any lights or sirens.

**ANSWER:** Defendants deny the allegations of this paragraph.

18. WILKERSON, COLLIER and DAVIS failed to notify dispatch or any of their superiors in the Springfield Police Department or otherwise broadcast that they were involved in a vehicle pursuit of the Challenger.

**ANSWER:** Defendants deny the allegations of this paragraph.

19. The police vehicle continued to pursue the Challenger eastbound on South Street near its intersection with 17th Street.

**ANSWER:** Defendants deny the allegations of this paragraph.

20. At or around 10:35 p.m., N.J. and AP., were passengers in a 2022 Silver Hyundai Elantra ("Elantra"), owned by Green Lincoln, Inc., and being driven by NADEJA MALONE south on 17th Street approaching its intersection with South Street.

**ANSWER:** Defendants admit the allegations of this paragraph.

21. At that time, the Challenger was traveling eastbound on South Street while being pursued by the police vehicle.

**ANSWER:** Defendants deny the allegations of this paragraph.

22. The Challenger failed to slow or stop at the stop sign controlling eastbound traffic on South Street prior to entering the intersection with 17th Street and struck the Elantra.

**ANSWER:** Defendants lack knowledge sufficient to admit or deny the allegations of this paragraph.

23. The violence of the collision between the Challenger and the Elantra was such that both vehicles suffered extensive damage and were both disabled at the scene.

**ANSWER:** Defendants admit the allegations of this paragraph.

24. BYRD, or someone else with the permission of the Defendant BYRD, was driving the Challenger, and fled from the scene on foot along with any other occupants of the Challenger.

**ANSWER:** Defendants lack knowledge sufficient to admit or deny the allegations of this paragraph.

25. All of the occupants of the Elantra were injured, including NADEJA MALONE, AP., and N.J., who suffered severe injuries.

**ANSWER:** Defendants lack knowledge sufficient to admit or deny the allegations of this paragraph.

26. WILKERSON, COLLIER and DAVIS witnessed the violent crash between the Challenger and Elantra.

**ANSWER:** Defendants deny the allegations of this paragraph.

27. NADEJA MALONE and other witnesses called 911 and summoned first responders to care for the wounded.

**ANSWER:** Defendants lack knowledge sufficient to admit or deny the allegations of this paragraph.

28. WILKERSON, COLLIER and DAVIS did not stop or attempt to apprehend the driver or occupants of the Challenger that fled the scene on foot.

**ANSWER:** Defendants admit the allegations of this paragraph.

29. WILKERSON, COLLIER and DAVIS did not stop or attempt to render aid to the injured occupants of the Elantra.

**ANSWER:** Defendants admit the allegations of this paragraph.

30. WILKERSON, COLLIER and DAVIS did not call dispatch, did not call 911 or otherwise summon emergency services to the scene or make any efforts whatsoever to provide or obtain needed urgent care to the injured.

**ANSWER:** Defendants admit the allegations of this paragraph.

31. At no time did WILKERSON, COLLIER and DAVIS radio dispatch or inform their superiors of their pursuit of the Challenger, its collision with the Elantra or the circumstances giving rise to it. This conduct worsened the Plaintiffs' legal plight.

**ANSWER:** Defendants deny the allegations of this paragraph.

32. WILKERSON, COLLIER and DAVIS, each individually, had a duty to intervene to prevent the other officers from infringing the constitutional rights of the Plaintiffs, but failed to do so.

**ANSWER:** Defendants deny the allegations of this paragraph.

33. Springfield Police Department Directive 22-015 (hereinafter Vehicle Pursuit Directive), in effect at all relevant times, prohibits vehicle pursuits except in limited circumstances, and sets forth the purpose, policy and procedures for initiating, conducting and terminating vehicular pursuits. A copy of the Vehicle Pursuit Directive is attached hereto as Exhibit A.

**ANSWER:** Defendants admit the allegations of this paragraph.

34. The purpose of the Vehicle Pursuit Directive is as follows:

> "I. PURPOSE
>
> The purpose of this order is to provide a set of standards for this department and its officers to follow in the initiation, conduct and termination of vehicular pursuits."

**ANSWER:** Defendants admit the allegations of this paragraph.

35. The policy behind the Vehicle Pursuit Directive is as follows:

> "II. POLICY
>
> A. Pursuits will not be initiated contrary to department policy. The decision to initiate a pursuit will be made balancing the risks involved to the officer and public against the need to immediately apprehend the violator.
>
> B. Vehicle pursuits will only be initiated when an officer has an articulable reason to believe that the occupant(s) of the fleeing vehicle have been involved in a forcible felony offense. Pursuits are prohibited for traffic offenses, property crimes, whether felony or misdemeanor, or when the suspect flees for unknown reasons. In choosing whether to initiate a pursuit or allow its continuation, officers will consider the degree of risk to which the officer exposes to himself and others in so doing.
>
> C. The objective of a motor vehicle pursuit is to maintain police contact with a fleeing driver, without unnecessary endangerment to life and property, until that individual can be apprehended. All members involved in a vehicle pursuit must be prepared to justify their actions. Officers and supervisors will constantly evaluate the circumstances surrounding the pursuit, and will immediately

> terminate the pursuit when the danger to the officer and/or the public outweighs the need to continue chasing the fleeing vehicle.
>
> D. Officers involved in a pursuit and supervisors monitoring a vehicle pursuit will continually assess the circumstances and the conditions encountered as the pursuit progresses. This includes giving consideration to the likelihood of apprehension, whether or not the identity of the offender is known, vehicle speeds, traffic volume and conditions, environmental factors such as weather and light conditions, location, presence of innocent passengers in vehicle being pursued, and types of streets involved. Pursuits will be terminated when the danger to the officer and/or public outweighs the need to immediately apprehend the violator. Officers in pursuits must remember that they are responsible for the safe and prudent operation of their vehicles at all times; merely being involved in a pursuit does not relieve an officer from the legal requirement of reasonable conduct."

**ANSWER:** Defendants admit the allegations of this paragraph.

36. WILKERSON, COLLIER and DAVIS violated the policy underlying the Vehicle Pursuit Directive as follows:

   a. the officers initiated the vehicle pursuit without balancing the risks involved to the officers and public against the need to immediately apprehend the driver and/or occupants of the Challenger.

   b. the officers initiated the vehicle pursuit without having an articulable reason to believe the occupant(s) of the Challenger had been involved in a forcible felony offense.

   c. the officers continued the vehicle pursuit without knowing the reason the occupants of the Challenger were fleeing from the them.

   d. the officers failed to consider the degree of risk to which they exposed themselves and others in initiating the pursuit and continuing to pursue the Challenger.

   e. the officers failed to constantly evaluate the circumstances surrounding the pursuit and failed to immediately terminate the pursuit when the danger the officers and/or the public outweighed the need to continue chasing the fleeing Challenger.

   f. the officers failed to terminate the pursuit when the danger to the officers and or public outweighed the need to immediately apprehend the driver or occupants of the Challenger.

**ANSWER:** Defendants deny the allegations of this paragraph.

37. WILKERSON, COLLIER and DAVIS violated the procedures fom1d in the Vehicle Pursuit Directive as follows:

    a. the officers failed to have their emergency lights and siren both in constant operation for the entire pursuit.

    b. the officers failed to broadcast: their unit identifier as the p1imary unit in the pursuit; a description of the vehicle being pursued; the nature of the offense; the location, direction of travel and approximate speed of the suspect vehicle; a description of the vehicle being pursued, including license info, if known; and a description and number of occupants of the pursued vehicle.

    c. the officers failed to terminate the pursuit of the Challenger when continuing the pursuit would result in an unacceptable hazard.

**ANSWER:** Defendants deny the allegations of this paragraph.

38. WILKERSON, COLLIER and DAVIS knew there was no lawful justification to pursue the Challenger.

**ANSWER:** Defendants deny the allegations of this paragraph.

39. WILKERSON, COLLIER and DAVIS demonstrated their consciousness of guilt that their pursuit was unjustified by their failure to notify dispatch of the pursuit because doing so would have caused a pursuit supervisor to be designated to assume responsibility for the pursuit and thereby expose their reckless conduct.

**ANSWER:** Defendants deny the allegations of this paragraph.

40. WILKERSON, COLLIER and DAVIS demonstrated their consciousness of guilt that their reckless conduct contributed to the collision between the Challenger and Elantra by their failure to stop at the scene and pursue the occupants of the Challenger who fled on foot or their failure to stop at the scene and render aid to the injured occupants of the Elantra.

**ANSWER:** Defendants deny the allegations of this paragraph.

41. WILKERSON, COLLIER and DAVIS demonstrated their consciousness of guilt that their reckless conduct contributed to the collision between the Challenger and Elantra when they hid their involvement in, contribution to or knowledge of the collision by failing to notify dispatch or communicate with any supervisors concerning their activities.

**ANSWER:** Defendants deny the allegations of this paragraph.

42. WILKERSON, COLLIER and DAVIS further violated the Vehicle Pursuit Directive by failing to prepare a Police Report or Pursuit Driving Report.

**ANSWER:** Defendants deny the allegations of this paragraph.

43. The driver's operation of the Challenger did not create any emergency and WILKERSON, COLLIER and DAVIS had time to consider whether to engage in an inherently risky pursuit.

**ANSWER:** Defendants deny the allegations of this paragraph.

44. Nonetheless, WILKERSON, COLLIER and DAVIS disregarded a great risk of harm to the public, especially, occupants of motor vehicles on the roadway, including the Plaintiff's minor children, by engaging in a pursuit in a non-emergent situation and in violation of department policy.

**ANSWER:** Defendants deny the allegations of this paragraph.

45. It was foreseeable that by pursuing the Challenger, WILKERSON, COLLIER and DAVIS' conduct would cause the driver of the Challenger to flee.

**ANSWER**: Defendants deny the allegations of this paragraph.

46. By pursuing the Challenger without justification in a densely populated area, WILKERSON, COLLIER and DAVIS precipitated a pursuit that caused the Challenger to collide with the Elantra occupied by NADEJA MALONE, A.P., and N.J.

**ANSWER:** Defendants deny the allegations of this paragraph.

47. But for the unauthorized, unwarranted and reckless pursuit initiated by WILKERSON, COLLIER and DAVIS, the driver of the Challenger would not have driven in such a manner so as to collide with the Elantra and cause injury to NADEJA MALONE, A.P., and N.J.

**ANSWER:** Defendants deny the allegations of this paragraph.

48. The dangerous and reckless conduct of WILKERSON, COLLIER and DAVIS was a substantial factor in causing economic injuries and bodily injuries to the plaintiffs.

**ANSWER:** Defendants deny the allegations of this paragraph.

49. As a direct and proximate result of the reckless actions of WILKERSON, COLLIER and DAVIS, NADEJA MALONE, A.P., and NJ. suffered past and future pain and suffering, mental anguish, anxiety, disability, loss of enjoyment of a normal life.

**ANSWER:** Defendants deny the allegations of this paragraph.

50. As a direct and proximate result of the reckless actions of WILKERSON, COLLIER and DAVIS, NADEJA MALONE, Individually, suffered damages and became liable for the past and future medical bills incurred in treating the bodily injuries suffered by her child until their 18th birthday.

**ANSWER:** Defendants deny the allegations of this paragraph.

51. As a direct and proximate result of the reckless actions of WILKERSON, COLLIER and DAVIS, STEPHEN PAROS, Individually, suffered damages and became liable for the past and future medical bills incurred in treating the bodily injuries suffered by his child until their 18th birthday.

**ANSWER:** Defendants deny the allegations of this paragraph.

52. WILKERSON, COLLIER DAVIS and CITY, acting under color of law, affirmatively caused NADEJA MALONE, A.P., and N.J.to be subjected to the deprivation of rights privileges and immunities guaranteed by the Constitution and the law.

**ANSWER:** Defendants deny the allegations of this paragraph.

## COUNT I
### Plaintiffs v. Wilkerson, Collier and Davis (42 U.S.C. § 1983-Due Process)

1 - 52. The Plaintiff repeats and realleges paragraphs 1 through 52 of the General Allegations of the Complaint as and for paragraphs 1 through 52 of this Count I.

**ANSWER:** Defendants repeat their responses to paragraphs 1 through 52 of the General Allegations.

53. Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience.

**ANSWER:** Defendants admit the allegations of this paragraph.

54. The aforementioned actions of Defendants WILKERSON, COLLIER and DAVIS shocks the conscience in that they acted with deliberate indifference and/or reckless disregard when they were not performing an emergency pursuit, nor responding to an emergency, when they followed the vehicle of Defendant BYRD and left the scene of the collision without calling in the collision.

**ANSWER:** Defendants deny the allegations of this paragraph.

55. Defendants WILKERSON, COLLIER and DAVIS then and there acted with knowledge of impending harm, which they consciously refused to prevent.

**ANSWER:** Defendants deny the allegations of this paragraph.

56. The harm to the Plaintiff resulting from Defendants WILKERSON, COLLIER and DAVIS's actions was obvious and/or known.

**ANSWER:** Defendants deny the allegations of this paragraph.

57. Defendants WILKERSON, COLLIER and DAVIS have sufficient knowledge of the dangers of conducting a non-emergency pursuit of Defendant BRYD and subsequent collision and

failing to render aid or even call for assistance. Instead, Defendants WILKERSON, COLLIER and DAVIS left the scene of the collision without reporting the same which demonstrates their criminal recklessness.

**ANSWER:** Defendants deny the allegations of this paragraph.

58. Defendants WILKERSON, COLLIER and DAVIS thus violated the substantive due process rights of Plaintiffs to be free from state actions that deprive them of liberty and bodily integrity, in such a manner as to shock the conscience.

**ANSWER:** Defendants deny the allegations of this paragraph.

## AFFIRMATIVE DEFENSES TO COUNT I

1. Defendants are entitled to qualified immunity as their conduct was justified by an

   objectively reasonable belief that it was lawful.

## COUNT II
### Plaintiffs v. Wilkerson, Collier and Davis (42 U.S.C. § 1983)

1 - 52. The Plaintiff repeats and realleges paragraphs 1 through 52 of the General Allegations of the Complaint as and for paragraphs 1 through 52 of this Count II.

**ANSWER:** Defendants repeat their responses to paragraphs 1 through 52 of the General

Allegations.

53. After the above-described collision between the Charger and Elantra, NADEJA MALONE, A.P., and N.J. had a serious medical need.

**ANSWER:** Defendants admit the allegations of this paragraph.

54. WILKERSON, COLLIER and DAVIS were aware that NADEJA MALONE, A.P., and N.J. had a serious medical need, or strongly suspected that NADEJA MALONE, A.P., and N.J. had a serious medical need.

**ANSWER:** Defendants deny the allegations of this paragraph.

55. WILKERSON, COLLIER and DAVIS all failed to request medical attention or call in the collision.

**ANSWER:** Defendants deny the allegations of this paragraph.

56. WILKERSON, COLLIER and DAVIS had a realistic opportunity to call in the collision and summon medical help for NADEJA MALONE, A.P., and N.J.

**ANSWER:** Defendants deny the allegations of this paragraph.

57. Failure of WILKERSON, COLLIER and DAVIS to call in the collision caused NADEJA MALONE, A.P., and N.J. harm.

**ANSWER:** Defendants deny the allegations of this paragraph.

### AFFIRMATIVE DEFENSES TO COUNT II

1. Defendants are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

### COUNT III
### Willful and Wanton Conduct (Plaintiffs v. Wilkerson, Collier and Davis)

1-52. Plaintiffs repeats and realleges paragraphs 1 through 52 of the General Allegations of the Complaint as and for paragraphs 1 through 52 of this Count III.

**ANSWER:** Defendants repeat their responses to paragraphs 1 through 52 of the General Allegations.

53. At all relevant times, WILKERSON, owed other motorists and their passengers, including NADEJA MALONE, A.P., and NJ, a duty to exercise ordinary care at all times to avoid placing himself or others in danger, to exercise ordinary care at all times to avoid a collision, and to operate the Challenger in compliance with the *Illinois Vehicle Code.*

**ANSWER:** Defendants admit the allegations of this paragraph.

54. In breach of the aforesaid duty, WILKERSON, was then and there guilty of one or more of the following negligent, willful and wanton acts or omissions:

    a. Negligently, carelessly, willfully and wantonly failed to stop at a stop intersection indicated by a stop sign and failed to yield the right of way in violation of Sections 11-904 of the Illinois Vehicle Code, 625 ILCS 5/11- 904;

    b. Negligently, carelessly, willfully and wantonly failed to stop at a stop intersection indicated by a stop sign and failed to yield the right of way in violation of Sections 11-1204 of the Illinois Vehicle Code, 625 ILCS 5/11- 1204;

    c. Negligently, carelessly, willfully and wantonly proceeded at a speed which was greater than reasonable and proper with regard to traffic conditions and the use of the highway, or which endangered the safety of persons or property in violation of Section 11-601 of the Illinois Vehicle Code, 625 ILCS 5/11-601;

    d. Negligently, carelessly, willfully and wantonly failed to decrease speed while pursuing the Challenger so as to avoid the Challenger colliding with another vehicle in violation of Section 11-601 of the Illinois Vehicle Code, 625 ILCS 5/11-601;

e.  Negligently, carelessly, willfully and wantonly failed to reduce speed when approaching an intersection, in violation of Section 11-601 of the Illinois Vehicle Code, 625 ILCS 5/11-601;

f.  Negligently, carelessly, willfully and wantonly failed to operate the police vehicle in a safe and proper manner;

g.  Negligently, carelessly, willfully and wantonly failed to keep a proper lookout;

h.  Negligently, carelessly, willfully and wantonly initiated a vehicle pursuit in violation of the Vehicle Pursuit.

i.  Negligently, carelessly, willfully and wantonly continued a vehicle pursuit in violation of the Vehicle Pursuit.

j.  Negligently, carelessly, willfully and wantonly failed to terminate a vehicle pursuit in violation of the Vehicle Pursuit.

**ANSWER:** Defendants deny the allegations of this paragraph.

55. As a direct and proximate result of one or more of the foregoing negligent, careless, willful and wanton acts or omissions of WILKERSON, NADEJA MALONE, AP., and N.J, suffered injuries of a personal nature, including but not limited to: past and future pain and suffering, disability and loss of enjoyment of a normal life.

**ANSWER:** Defendants deny the allegations of this paragraph.

## AFFIRMATIVE DEFENSES TO COUNT III

1. Defendants are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

2. Defendants are immune from liability under the Illinois Tort Immunity Act.

## COUNT IV
### Plaintiff v. Wilkerson, Collier, Davis and City (Family Expense Act)

1-52. The Plaintiff repeats and realleges paragraphs 1 through 52 of the General Allegations of the Complaint as and for paragraphs I through 52 of this Count IV.

**ANSWER:** Defendants repeat their responses to paragraphs 1 through 52 of the General Allegations.

53. WILKERSON, COLLIER, DAVIS and CITY, are liable for the bodily injuries incurred by the minor children, A.P. and N. J., as set forth in the counts above.

**ANSWER:** Defendants deny the allegations of this paragraph.

54.     As a result of the aforesaid injuries to the minor children, A.P. and N.J., the Plaintiff NADEJA MALONE and STEPHEN PARIS, are liable for and will continue to be liable for past medical expenses and additional future medical expenses endeavoring to cure their children of the injuries they sustained in the collision described above, all to the Plaintiff s damage in a sum anticipated to be in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**ANSWER:**    Defendants lack sufficient knowledge to admit or deny the allegations of this paragraph.

## AFFIRMATIVE DEFENSES TO COUNT IV

1.     Defendants are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

2.     Defendants are immune from liability under the Illinois Tort Immunity Act.

## <u>COUNT V</u>
### Plaintiffs v. City of Springfield *Monell* Claim

1 -52.   The Plaintiff repeats and realleges paragraphs 1 through 52 of the General Allegations of the Complaint as and for paragraphs 1 through 52 of this Count V.

**ANSWER:**    Defendants repeat their responses to paragraphs 1 through 52 of the General Allegations.

53.     At all times relevant, Plaintiffs enjoyed and possessed a right under the United Stated Constitution to be free from violations by police, including WILKERSON, COLLIER, JA'MARAE DAVIS.

**ANSWER:**    Defendants admit the allegations of this paragraph.

54.     Plaintiffs' injuries and damages herein were proximately caused by policies and practices on the part of the City, which fall under the authority of the City.

**ANSWER:**    Defendants deny the allegations of this paragraph.

55.     In July 2022, and for a period of time prior thereto, the City had notice of a widespread practice by their employees under which citizens, such as Plaintiff, were routinely placed in danger as a result of conduct by its police officers, including violation of its pursuit policies.

**ANSWER:**    Defendants deny the allegations of this paragraph.

56.     The City's willful violation of its pursuit policies is enabled by the code of silence.

**ANSWER:**   Defendants deny the allegations of this paragraph.

57.     The City has also engaged in a widespread practice of their respective employees testifying dishonestly, making false reports, hiding and destroying evidence, failing to require official reports of official police activities, and/or failing to require complete and honest reports of police activities.

**ANSWER:**   Defendants deny the allegations of this paragraph.

58.     These practices are directly encouraged at every level of law enforcement, from the Corporation Counsel's Office, to IA, and infect the City's relationship with its police, including but not limited to the employment contract with the Union.

**ANSWER:**   Defendants deny the allegations of this paragraph.

59.     The failure to require police reports that are complete and honest encourages officers not to report the misconduct of other officers and creates a culture that enables misconduct.

**ANSWER:**   Defendants deny the allegations of this paragraph.

60.     On information and belief, WILKERSON, COLLIER, JA'MARAE DAVIS and other City employees failed to call-in or report their pursuit and ultimate car crash that injured the Plaintiff. Springfield police officers have a widespread practice of falsely reporting specific lies that work to cast doubt over mistakes in their police work. Similarly, officers engaged in pursuits tell lies that either they were not pursuing or they terminated the pursuit prior to the fatal accident.

**ANSWER:**   Defendants deny the allegations of this paragraph.

61.     Furthermore, the City fails to adequately investigate and discipline officers who have conducted wrongful reckless pursuits. Likewise, the City fails to discipline their employees when they commit perjury and create false reports.

**ANSWER:**   Defendants deny the allegations of this paragraph.

62.     The City has a widespread practice of failing to adequately document claims by officers about vehicle pursuits or other misconduct.

**ANSWER:**   Defendants deny the allegations of this paragraph.

63.     Springfield police officers assigned to investigate misconduct of fellow officer provide union representatives access to and information about police misconduct. That access and information is passed, often under dubious notions of legal privilege, between lawyers and accused Springfield officers. In this manner, Springfield officers can craft false narratives misconduct that do not conflict. This issue of misconduct is even more concentrated in the Street Crimes Unit, which Defendant WILKERSON, COLLIER and DAVIS were working at the time of the incident with Plaintiffs.

**ANSWER:**   Defendants deny the allegations of this paragraph.

64. In furtherance of this practice, the Springfield Police Department and IA, permit witness and accused officers to be represented by the same counsel and Union representatives during official statements, who take breaks from being on the record to set their clients' stories straight.

**ANSWER:** Defendants deny the allegations of this paragraph.

65. Rather than discipline misconduct and require reporting, the City circles the wagons. This widespread practice is allowed to flourish because the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers, and by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiffs.

**ANSWER:** Defendants deny the allegations of this paragraph.

66. In this way, the City violated Plaintiff's rights by maintaining policies and Practices that were the moving force for the foregoing constitutional violations.

**ANSWER:** Defendants deny the allegations of this paragraph.

67. The above-described widespread practices, so well-settled as to constitute de facto policy in the City, and were able to exist and thrive because governmental policymakers with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:** Defendants deny the allegations of this paragraph.

68. Plaintiffs' injuries were proximately caused by employees of the City, including but not limited to WILKERSON, COLLIER, JA'MARAE DAVIS who acted pursuant to City policy and practices in engaging in the misconduct described in this Count,.

**ANSWER:** Defendants deny the allegations of this paragraph.

## COUNT VI
### Plaintiffs v. City of Springfield Statutory Indemnification

1 -52. The Plaintiff repeats and realleges paragraphs 1 through 52 of the General Allegations of the Complaint as and for paragraphs 1 through 52 of this Count VI.

**ANSWER:** Defendants repeat their responses to paragraphs 1 through 52 of the General Allegations.

53. WILKERSON, COLLIER, and JA'MARAE DAVIS, are liable for damages injuries incurred by the Plaintiff's minor children, ACELYN PARIS and NASIAH JACKSON, for past and future injuries they received in the collision as set forth in Cunts I through V above.

**ANSWER:** Defendants deny the allegations of this paragraph.

54. Illinois Law provides that public entities, such as CITY, are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope to their employment activities, including the activities of WILKERSON, COLLIER and DAVIS.

**ANSWER:** Defendants admit indemnification law, but deny the remaining allegations of this paragraph.

55. The CITY is therefore obligated to pay any judgment for compensatory damages entered against WILKERSON, COLLIER and DAVIS in this matter.

**ANSWER:** Defendants admit the allegations of this paragraph.

## AFFIRMATIVE DEFENSES TO COUNT IV

1. Defendants are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

2. Defendants are immune from liability under the Illinois Tort Immunity Act.

**WHEREFORE**, Defendants pray this Court dismiss the Complaint and grant Defendants their costs and any other relief the Court deems just.

**DEFENDANTS DEMAND TRIAL BY JURY**

    **RESPECTFULLY SUBMITTED,**
    **/s/ Steven C. Rahn**
    Attorney for Defendant
    Senior Assistant Corporation Counsel
    Room 313 Municipal Center East
    800 East Monroe Street
    Springfield, Illinois 62701-1689
    Telephone: (217) 789-2393
    Fax: (217) 789-2397
    Email: steven.rahn@springfield.il.us

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **NADEJA MALONE,** et. al. | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KEVIN BYRD,** et. al. | ) | No. 24-cv-03111 |
|     **Defendants.** | ) | |
| | ) | |
| | | |
| **DARNELL WILSON,** et. al. | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 24-cv-03115 |
| | ) | |
| **DEREK WILKERSON,** et.al. | ) | |
|     **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on **July 22, 2024,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Frederick J. Schlosser and Timothy J. Freiberg, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

                                              RESPECTFULLY SUBMITTED,
                                              s/ Steven C. Rahn
                                              Bar Number 6188985
                                              Assistant Corporation Counsel
                                              Room 313 Municipal Center East
                                              800 East Monroe Street
                                              Springfield, Illinois 62701-1689
                                              Telephone:    (217) 789-2393
                                              Fax:              (217) 789-2397
                                              Email:  steven.rahn@springfield.il.us
                                                                corporationcounsel@springfield.il.us